BLOCK *v.* SHERMAN ET AL.

[No. 16,661.   Filed June 24, 1941.]

*Frederick K. Baer* and *George A. Crane,* both of South Bend, for appellant.

*Seebirt, Oare & Deahl,* of South Bend, for appellees.

BEDWELL, J.—Appellant filed an action in the court below for specific performance of an agreement for the sale of real estate. The trial court sustained a demurrer of appellees to the second amended complaint and supplemental complaint of appellant. The appellant refused to plead further and he appeals from the resultant judgment.

The material facts, essential for a determination of the questions raised, alleged in the second amended complaint and supplemental complaint are as follows:

"That on the 29th day of November, 1939, and for a long time prior thereto, the defendant, Augusta J. Sherman, was the owner in fee simple of the real estate known and described as lot No. 92 as shown on the recorded Plat of Harter Heights First Addition to the City of South Bend; also the west one-half (½) of lot No. 91 as shown on the recorded Plat of Harter Heights Second Addition to the City of South Bend, Indiana, which said parcels formed one single building lot designated and carried on the records of the City Engineer of the City of South Bend, Indiana, as and commonly known in said city as 1304 Leeper Avenue, South Bend, Indiana.

"That on said date, the defendant, Augusta J. Sherman, entered into an agreement with the plaintiff for the sale of said real estate and gave to said plaintiff a memorandum in her own handwriting of said agreement in the following words and figures, to-wit:

"Purchase    13500  Purchase Price
                 500  Paid on acc.
            _____
              13000  Bal.

"Taxes to be assumed—133.98 twice a year
    May and November
"1000 tax exemption to be made by May
    1st Monday—
"Bal. to be paid cash—upon the delivery of
    Deed and Abstract brought up to date
    267.96

"That by the terms of said agreement and the memorandum thereof, the defendant, Augusta J. Sherman, offered to sell said real estate for the sum of thirteen thousand five hundred ($13,500.00) dollars of which said sum of five hundred ($500.00) dollars was to be paid on the 29th of November 1939; that the plaintiff was to assume taxes due in the amount of one hundred thirty-three and 98/100 ($133.98) payable twice a year, and the balance of the purchase price was to be paid in cash upon the delivery of the deed and the abstract brought up to date. That plaintiff duly accepted all the terms of said agreement and the memorandum thereof.

"That thereupon the plaintiff gave to the said Augusta J. Sherman his check in the sum of five hundred ($500.00) dollars which was duly accepted by said defendant and a memorandum in writing of said payment and signed by the said Augusta J. Sherman was given to the plaintiff by her, same being in the following words and figures, to wit:

"Nov. 29, 1939

"Received of Saul Block—$500.00 to apply on purchase price of $13,500 for property located at 1304 Leeper Avenue, South Bend, Indiana.

"(signed) Augusta J. Sherman

"That as in said memorandum used the words and figures '1304 Leeper Avenue, South Bend, Indiana' was understood by said parties as referring to and embracing the real estate hereinabove described.

"That said above mentioned memoranda were both given to the plaintiff by the defendant at the same time and simultaneously upon her receiving the said check for five hundred ($500.00) dollars.

"Plaintiff further alleges that on the 30th day of November 1939, the said defendant gave notice of recission of said agreement to the plaintiff by registered mail, said notice being in the following words, to wit:

"First Bank and Trust Company
of South Bend
"South Bend Indiana
"Dear Mr. Block: Am returning your check to you as Mr. Brown feels that I am

morally obligated to let him have the place.
Very sorry about it all.

"Very Resp.   Augusta J. Sherman

"That upon receipt of said notice, plaintiff immediately notified the said defendant, Augusta J. Sherman, that he insisted upon her compliance with said agreement and that he rejected her recission of said agreement.   .   .   ."

These pleadings allege further facts that show that the plaintiff was at all times ready, able, and willing to perform all the terms of the agreement to be by him performed; that he notified the defendants Samuel Brown and Anna Fae Brown of his agreement for the purchase of the real estate and filed a *lis pendens* notice with the clerk of the court where his complaint was filed, and that thereafter the defendant Augusta J. Sherman conveyed the real estate to the defendants Samuel Brown and Anna Fae Brown.   The pleadings pray that the defendants be required to execute a deed to the described real estate upon the payment of the sum of thirteen thousand five hundred dollars ($13,500.00) by the plaintiff, and payment of taxes on such real estate, and that a commissioner be appointed, if necessary, to make said conveyance.

The questions for determination grow out of the Statute of Frauds (§ 33-101, Burns' 1933; § 8363, Baldwin's 1934).   They are as follows:

1.   Can the unsigned and undated written memorandum, set forth in the complaint, be considered with the signed receipt dated November 29, 1939, in order to make an enforceable contract within the terms of the statute?

2.   If the unsigned and undated memorandum cannot be so considered, is the signed and dated receipt, within itself, a sufficient memorandum to make enforceable a contract within the statute?

The statute provides:

"No action shall be brought in any of the following cases:
"First. . . .
"Second. . . .
"Third. . . .
"Fourth. Upon any contract for the sale of lands.
"Fifth. . . .

"Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years."

It is well established that the memorandum may consist of several writings, if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction. *Isphording* v. *Wolfe* (1905), 36 Ind. App. 250, 75 N. E. 598; *Maris* v. *Masters* (1903), 31 Ind. App. 235, 243, 67 N. E. 699.

It is also well established that a memorandum may consist of several writings though one writing only is signed, if the signed writing is annexed to the other writings by the party to be charged, or the signed writing refers to the unsigned writing so as to make it a part of the instrument which refers to it.

In Pomeroy's Specific Performance of Contracts, 3 ed. (1926), § 90, p. 217, the author states:

"The subject-matter of the agreement must all be included in the memorandum, and must be described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence simply disclosing the situation of the parties at, and immediately before, the time of making the contract. . . . The description of the subject-matter may be wholly or partially contained in an auxiliary writing, which, if referred to in such a

manner as to establish the connection, becomes a constituent part of the memorandum; . . ."

In Browne on the Statute of Frauds, 5 ed., § 346b, p. 470, the author states:

"It is often the case that the terms of the contract are not all contained in any one paper. The question then arises, under what circumstances two or more papers can be offered in evidence as together constituting the memorandum, one only or all being signed, as the case may be. With regard to the first case, the rule is that the letter or other paper that is signed is to be regarded as incorporating and reciting any other writing referred to in it. It follows, then, that in the case of any signed paper, those writings referred to in it may be read, provided they were in existence at the time when the paper referring to them was signed. It seems also that one signature may apply not only to the paper on which it is written, but also to another which at the time of signing was attached to it in such a way as to indicate that the whole was intended to be recognized by the signer as one paper."

In *Ridgway* v. *Ingram* (1875), 50 Ind. 145, 147, in discussing the sufficiency of a memorandum of a contract that was within the Statute of Frauds, the court says:

"It seems to be well settled, that a memorandum, in order to make another writing a part thereof, so as to constitute a part of the contract, must refer to such other writing; and that parol proof of the connection of the papers is not admissible to establish a contract required by the statute of frauds to be in writing."

In *Feichter* v. *Korn* (1919), 70 Ind. App. 205, 210, 123 N. E. 355, this court says:

"Appellant insists that the exhibits to the complaint taken together constitute the contract, the specific performance of which he seeks in his action. There is no reference whatever in any one of these instruments to either of the others, and without such reference, under the statute of frauds

which requires that all contracts for the sale of real estate shall be in writing, they cannot be construed together as constituting the contract, for extrinsic evidence cannot be heard to show their relation each to the others. The evidence of the relation must be within the instruments themselves. Many authorities sustain this principle, among which we cite *Graham* v. *Henderson Elevator Co.* (1916), 60 Ind. App. 697, 111 N. E. 332, which contains a full discussion of the question, and cites numerous authorities."

In *Highland Investment Co.* v. *The Kirk Co.* (1933), 96 Ind. App. 5, 8, 184 N. E. 308, in discussing the question of the sufficiency of letters to constitute a memorandum of a contract that was within the statute, this court says:

"Certainly the first letter is not a full expression of the contract which leaves nothing to further negotiations and since the second does not contain an express reference to the first, and does not contain internal evidence of their unity, relation or connection, they cannot be construed together, and neither of the letters is sufficient alone, nor are they both together."

The signed receipt and the unsigned memorandum, which are set forth in appellant's complaint, are not alleged to have been physically attached by the appellee Augusta J. Sherman so as to evidence her intention that they be considered as one instrument. Where we have a signed instrument and an unsigned one, the connection between the two instruments must appear by internal evidence derived from the signed instrument. This connection cannot be shown by parol evidence concerning the intentions or actions of the parties. The signed instrument must so clearly and definitely refer to the unsigned one that, by force of the reference, the unsigned one becomes a part of the signed instrument.

There is no reference whatever in the signed receipt to the memorandum which appellant claims was made by the appellee Augusta J. Sherman in her own handwriting and was given to appellant. The fact that the two instruments were made by the appellee Augusta J. Sherman in her own handwriting; that both were delivered to the appellant by her on the same date, and that both recite a purchase price of thirteen thousand five hundred dollars ($13,500) and a payment of five hundred dollars ($500), would not be sufficient to make the unsigned document a part of the signed document. Despite the identity of handwriting, date of delivery, and amount of purchase price, it would be necessary to resort to parol testimony to show the connection between the two papers.

In the case of *Graham* v. *Henderson Elevator Co.* (1916), 60 Ind. App. 697, 705, 111 N. E. 332, the court quotes the following which is applicable:

"The connection between the signed and unsigned papers can not be made by parol evidence that they were actually intended by the parties to be read together, or of facts and circumstances from which such intention may be inferred. The connection between them must appear by internal evidence derived from the signed memorandum. Parol testimony will be received only for the purpose of interpretation or explanation, where technical terms are employed, or to identify papers which, by a reference in the signed memorandum, are made parts of it."

We hold that the unsigned and undated memorandum, set forth in appellant's complaint, cannot be considered with the signed and dated receipt in order to make an enforceable contract within the Statute of Frauds.

The American Law Institute, in its Restatement of the Law of Contracts, § 207, on p. 278, lays down the

following rule for testing the sufficiency of a memorandum of a contract that is within the statute, viz:

"A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty,

"(a)  each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and

"(b)  the land, goods or other subject-matter to which the contract relates; and

"(c)  the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

The rule as laid down is in accord with numerous decisions of this court and the Supreme Court of this state. In the recent case of *Wertheimer* v. *Klinger Mills, Inc.* (1940), 216 Ind. 481, 485, 25 N. E. (2d) 246, the Supreme Court of this state says:

'As to appellants' second contention, it has repeatedly been held, both by the courts of this state and of the other states, that in order to take a contract of sale out of the Statute of Frauds the written memorandum must give all of the essential terms of the contract. A contract in writing which leaves some essential term thereof to be shown by parol is only a parol contract and is, therefore, not enforceable under the Statute of Frauds."

The written contract presupposes a prior verbal agreement which it embodies. The writing is the evidence of the agreement, and not the essence of it. The memorandum, in order to satisfy the Statute of Frauds, must contain all the essential stipulations and undertakings of the verbal bargain. If any of these stipulations are omitted, then the memoran-

dum—although the parts which it does contain might, by themselves, make a complete contract—is not a note or memorandum of the agreement as required by the statute, and cannot be enforced at law or in equity. See Pomeroy on Specific Performance (1926), § 91, p. 225; *Butler University* v. *Weaver* (1932), 97 Ind. App. 151, and numerous cases cited on p. 155.

The signed receipt does show each party to the contract, but it does not show the terms and conditions of all the promises constituting the oral contract of which the signed receipt is claimed by the appellant to be a memorandum.

It was alleged in appellant's complaint that the appellee Augusta J. Sherman offered to sell certain real estate for the sum of thirteen thousand five hundred dollars ($13,500), and that the appellant was to pay the sum of five hundred dollars ($500) on the 29th day of November, 1939, and that appellant was to assume taxes in the amount of one hundred thirty-three dollars and ninety-eight cents ($133.98), payable twice a year, and the balance of the purchase price was to be paid in cash upon the delivery of the deed and the abstract brought up to date. The signed receipt shows nothing concerning assumption of taxes, completion of abstract, or time of payment of balance of purchase price. While the time and place of performance are not always necessary terms of a valid memorandum, because in their absence the law supplies these by implication, but where a time for performance has been expressly agreed upon as a part of the contract, and thus made a condition, it must appear as a constituent part of the memorandum.

In the case of *Berman Stores Co.* v. *Hirsh* (1925), 240 N. Y. 209, 148 N. E. 212, 213, the court well states the rule as follows:

"If the parol agreement fixed no time for delivery the memorandum evidencing the contract is sufficient under the statute since it contains all the terms which have been agreed on. In such case the law supplies the missing term and requires delivery within a reasonable time. If, on the other hand, the time was fixed by the parties the memorandum is insufficient.

" 'It is not sufficient that the note or memorandum may express the terms of a contract. It is essential that it should completely evidence the contract which the parties made.' (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310)" 110 N. E. 619.

The receipt did not completely evidence the contract the parties made.

The judgment is affirmed.

NOTE.—Reported in 34 N. E. (2d) 951.